UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ANIMAL WELFARE INSTITUTE | ) | |
| 900 Pennsylvania Avenue S.E. | ) | |
| Washington, D.C. 20003, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| FARM SANCTUARY | ) | |
| 3100 Aikens Road | ) | |
| Watkins Glen, NY 14891 | ) | |
| | ) | |
| Plaintiff | ) | Civil Action No. |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| AGRICULTURE | ) | |
| 1400 Independence Ave. S.W. | ) | |
| Washington, D.C. 20250, | ) | |
| | ) | |
| FOOD SAFETY AND INSPECTION | ) | |
| SERVICE | ) | |
| 1400 Independence Ave. S.W. | ) | |
| Washington, D.C. 20250 | ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §

552, as amended, to compel the United States Department of Agriculture ("USDA") and its Food

and Safety Inspection Service ("FSIS") to disclose certain records by publishing them on the

internet in the agency's electronic reading room and by providing them directly and proactively

to Plaintiffs pursuant to FOIA's affirmative disclosure requirement, 5 U.S.C. § 552(a)(2).  These

records—Noncompliance Records ("NR") and Memoranda of Interviews ("MOI") prepared

pursuant to the Humane Methods of Slaughter Act ("HMSA") and the Poultry Products

Inspection Act ("PPIA")—have been routinely requested from the USDA and FSIS for many

1

years by Plaintiffs and others, because Plaintiffs and similar animal protection groups, advocacy

organizations, and reporters rely heavily on these documents to monitor and keep the public

informed about the USDA's implementation and enforcement of these statutes (or lack thereof).

Congress enacted the HMSA decades ago to ensure that "the slaughtering of livestock and the

handling of livestock in connection with slaughter shall be carried out only by humane methods,"

7 U.S.C. § 1901, and it enacted the PPIA to ensure that poultry products be "wholesome, not

adulterated, and properly marked, labeled, and packaged," 21 U.S.C. § 451.  Plaintiffs and others

rely on the records described above, which describe incidents of non-compliance with these

statutes as well as the agency's enforcement efforts, or lack thereof, to prepare reports on the

USDA's implementation of the HMSA and PPIA, to promote press coverage of the USDA's

implementation of these statutes, and to advocate for more effective implementation of these

statutes and humane treatment of animals.

2.      The USDA's failure to publish these records pursuant to FOIA's proactive

disclosure requirements and to also provide these records directly and proactively to Plaintiffs

hinders Plaintiffs' ability to carry out these activities, and to keep the public informed about

these matters and whether and to what extent the USDA is carrying out its responsibilities under

the HMSA and PPIA.

## JURISDICTION

3.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B)

and 28 U.S.C. § 1331.

## PARTIES

4.      Plaintiff Animal Welfare Institute ("AWI") is an organization devoted to the

protection of animals and is a non-profit organization pursuant to section 501(c)(3) of the

Internal Revenue Code.  AWI's mission includes promoting the humane treatment of farm animals, the vast majority of which now endure living conditions and slaughter processes that fall far short of the congressional intent to ensure that farm animals be transported and slaughtered humanely.  *See*, *e.g.*, 7 U.S.C. § 1901 (stating that slaughter shall be "carried out only by humane methods").  AWI relies heavily on the records at issue to carry out its mission of monitoring and reporting on the USDA's implementation of statutory and regulatory standards for the humane treatment of farm animals and to protect farm animals from inhumane conditions, and the organization plans to continue to rely on such information in the future for such purposes.  AWI's charitable animal protection and advocacy work is injured by Defendants' failure to publish the records at issue and proactively provide such records to AWI pursuant to FOIA's affirmative disclosure requirements.  That injury will be redressed if Plaintiffs prevail in this action and the records at issue are immediately and prospectively disclosed to AWI without requiring it to submit individual requests for such information pursuant to FOIA.

5.      Plaintiff Farm Sanctuary is an organization dedicated to protecting farm animals from cruelty, and to engaging and educating the public regarding the treatment of farm animals. Farm Sanctuary is a non-profit organization pursuant to section 501(c)(3) of the Internal Revenue Code.  With over 500,000 members and supporters, Farm Sanctuary is the nation's largest and most effective farm animal rescue and protection organization.  Farm Sanctuary relies on the records at issue to carry out its mission by educating the public about risks in the U.S. food system and to advocate for the improved enforcement of food safety and animal protection laws and regulations.  Farm Sanctuary's charitable animal protection and advocacy work is injured by Defendants' failure to publish the records at issue and proactively provide such records to Farm Sanctuary pursuant to FOIA's affirmative disclosure requirements.  That injury

will be redressed if Plaintiffs prevail in this action and the records at issue are immediately and prospectively disclosed to Plaintiffs without requiring them to submit individual requests for such information pursuant to FOIA.

6.     Defendant USDA is a department of the federal government and has possession and control of the records at issue in this case.  It is responsible for implementing the HMSA and the PPIA, as well as the affirmative disclosure requirements of FOIA, including the obligation to make certain records available to the public through electronic means.

7.     Defendant FSIS is a division of the USDA that administers the HMSA and the PPIA.  As such, it also has possession and control of the records at issue here, and is responsible for implementing the affirmative disclosure requirements of FOIA, including the obligation to make certain records available to the public through electronic means.

<b>FACTS GIVING RISE TO PLAINTIFFS' CLAIMS FOR RELIEF</b>

**A.     Legal Requirements for Humane Treatment of Animals Slaughtered for Human Consumption.**

8.     Congress first enacted the Humane Methods of Slaughter Act in 1958, requiring that any meat sold to the U.S. government come from animals that were slaughtered humanely. In 1978, Congress expanded the HMSA to require that livestock imported into the U.S. for meat be slaughtered humanely.  In particular, the HMSA requires that livestock must be "rendered insensible to pain" before slaughter.  7 U.S.C. § 1902(a).  However, the USDA failed to meaningfully enforce the HMSA for many years.  Consequently, in 2002, Congress called on the Secretary of Agriculture to "fully enforce" the HMSA in order to "prevent needless suffering" of animals, and reaffirmed that "[i]t is the policy of the United States that the slaughtering of livestock and the handling of livestock in connection with slaughter shall be carried out only by humane methods."  Public Law 107-171 § 10305.

9.      Congress enacted the Poultry Products Inspection Act in 1957, finding that "[i]t is essential in the public interest that the health and welfare of consumers be protected by assuring that poultry products distributed to them are . . . not adulterated." 21 U.S.C. § 451.  To that end, the PPIA requires poultry processing facilities "to be operated in accordance with such sanitary practices" as will prevent adulterated products, *id.* § 456, and requires FSIS to inspect poultry processing facilities and processed poultry, *id.* § 455.  To achieve the PPIA's goals, FSIS requires that facilities that slaughter poultry operate "in accordance with good commercial practices." 9 C.F.R. § 381.65.  The PPIA prohibits any person from slaughtering or processing poultry in violation of relevant statutory or regulatory provisions, 21 U.S.C. § 458, and requires facilities to maintain records of compliance with the statute and regulations.  *Id.* § 460(b)(1).  FSIS gathers and maintains records relating to regulated entities' compliance with the PPIA.

**B.      The Freedom of Information Act**

10.      "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).  "[D]isclosure, not secrecy, is the dominant objective of the Act." *Id.*

11.      Congress enacted FOIA "to clarify and protect the right of the public to information." S. Rep. 1219 (July 22, 1964).  In 1996, Congress clarified that "the purpose of the Freedom of Information Act is to require agencies of the Federal Government to make certain agency information available for public inspection and copying and to establish and enable enforcement of the right of any person to obtain access to the records of such agencies." S. Rep. 104-272.

12.     FOIA contains provisions requiring agencies to disclose records to individual requesters in response to FOIA requests, and contains affirmative disclosure requirements that require federal agencies to provide certain records to the public as a whole.

13.     With regard to individual requests for records, FOIA requires agencies of the federal government to conduct a reasonable search for requested records and to release them to a requester, unless one of nine specific statutory exemptions applies to the requested information." 5 U.S.C. § 552(a)(3), (b).  Agencies must release all non-exempt segregable information that is requested.  *Id.* § 552(b).

14.     FOIA also requires agencies to proactively disclose certain types of records, including final opinions and orders made in the adjudication of cases, statements of policy and interpretations adopted by the agency, administrative staff manuals, and, as most relevant here, frequently requested records.  *Id.* § 552(a)(2)(D) ("Each agency . . . shall make available for public inspection in an electronic format . . . copies of all records, regardless of form or format . . . that have been released to any person under paragraph (3); and that because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records; or that have been requested 3 or more times").

15.     Congress has repeatedly amended FOIA to mandate greater proactive disclosure of frequently requested records.  In 1996, Congress specified that agencies must "make available for public inspection" certain frequently requested records, including "copies of all records, regardless of form or format," which have been "released to any person," and which "because of the nature of their subject matter . . . have become or are likely to become the subject of subsequent requests for substantially the same records."  5 U.S.C. § 552(a)(2)(D).

16.     In 2016, Congress again amended FOIA to add to its affirmative disclosure mandate.  Congress clarified that all affirmatively disclosed records must be "made available for public inspection in an electronic format," and that the category of frequently requested records also includes records that have been released and "requested 3 or more times."  *Id.*

17.     FOIA's affirmative disclosure mandate thus requires agencies to make available for public inspection in an electronic format—i.e. by posting on the internet—frequently requested records.

18.     FOIA also requires agencies to post online a "general index" of frequently requested records.  5 U.S.C. § 552(a)(2)(E).

19.     Congress intended for FOIA's affirmative disclosure mandate "to encourage on-line access to government information" so that "the public can more directly obtain and use Government information."  H. Rep. No. 104-795 (1996).  Accordingly, Congress acted "to prompt agencies to make information available affirmatively on their own initiative in order to meet anticipated public demand for it."  S. Rep. No. 104-272.

20.     Congress also intended for FOIA's affirmative disclosure mandate to aid in reducing the need for individual FOIA requests by making information available online.  Finding that agency delays in responding to individual requests "continue as one of the most significant FOIA problems," Congress explained that "[w]ith more affirmative disclosure, agencies can better use their resources," allowing them to "more efficiently use their limited resources to complete requests on time."  H. Rep. No. 104-795.  Congress envisioned that improved on-line access to information would also "result in fewer FOIA requests, thus enabling FOIA resources to be more efficiently used in responding to complex requests."  *Id.*

7

21.     FOIA generally requires an agency to respond to any FOIA request within 20 working days, 5 U.S.C. § 552(a)(6)(A)(i).  Similarly, FOIA generally requires agencies to respond to an administrative appeal regarding any FOIA request within 20 working days.  *Id.* § 552(a)(6)(A)(ii).

22.     A requester has exhausted its administrative remedies "if the agency fails to comply with" FOIA's twenty working day deadline.  *Id.* § 552(a)(6)(C)(i).  In that event, FOIA authorizes the requester to invoke the jurisdiction of a federal court to obtain the requested records.  *Id.* § 552(a)(4)(B).

23.     The USDA rarely meets FOIA's deadlines for responding to FOIA requests, and as a result currently and consistently has a substantial backlog of FOIA requests.  Except in limited circumstances, USDA and FSIS process FOIA requests on a "first-in/first-out" basis.  As a consequence, individuals seeking access to information through requests under 5 U.S.C. § 552(a)(3) typically must wait for many months, and often years, to obtain a final substantive response to such requests from the USDA.

**C.     FSIS Noncompliance Records and Memoranda of Interview**

24.     The records principally at issue in this case—Noncompliance Records and Memoranda of Interview prepared pursuant to the Humane Methods of Slaughter Act and the Poultry Products Inspection Act and those statutes' implementing regulations—constitute FSIS's key records of its administrative enforcement of the HMSA and PPIA through its inspections of regulated facilities at which livestock and poultry destined for human consumption are handled at and just before slaughter.

25.     According to FSIS's publicly available training documents for inspectors on how to use its Public Health Information System (an electronic system FSIS uses for entering and

8

tracking Noncompliance Records, Memoranda of Interview, and other records), a

Noncompliance Record "serves as FSIS's official notification and documentation of [a regulated

facility's] failure to meet one or more regulatory requirements." When an FSIS inspector finds

that a regulated facility is failing to comply with a statutory or regulatory standard, the inspector

must notify the facility, prepare a Noncompliance Record and present it to the facility's

management and verify that the facility will take action to come into compliance with the

relevant standard.  FSIS must document any instance of noncompliance with statutory or

regulatory standards, and may not allow a regulated facility to correct an instance of

noncompliance without documentation.

26.     Noncompliance Records are important records of FSIS's implementation of the

HMSA and PPIA (as well as other statutes) because they provide "the basis for supporting

further enforcement actions."  FSIS describes Noncompliance Records as "the building blocks

for a legal case that may be developed against an establishment."  FSIS stresses that because

Noncompliance Records are often "the only evidence" on which FSIS can rely for subsequent

enforcement actions, these documents "must speak for themselves," making it "extremely

important that [inspectors] use good documentation practices" and provide a "written description

of noncompliance" that "adequately supports the determination of regulatory noncompliance."

27.     FSIS instructs its inspectors to provide in a Noncompliance Record "[a] clear,

concise, and complete description of each noncompliance including the exact problem, the time

it occurred and its location, and the effect on product, if any."  FSIS stresses that this

"description should clearly explain how the [inspector's] findings support the determination that

the establishment did not meet regulatory requirements."

28.     Noncompliance Records also document any "developing trend of noncompliance," including a "description of how the [inspector] determined that this noncompliance is from the same cause as the previous noncompliance," as well as any corrective or preventive measures undertaken since the previous noncompliance that failed to correct the problem.

29.     A Memorandum of Interview is a written summary of an interview between an FSIS inspector and a regulated facility.  According to FSIS, a Memorandum of Interview includes the date of the meeting, the meeting participants, and "captures and summarizes critical, relevant information including the specific topics discussed and answers to any questions asked during the meeting."  FSIS notes that the Memorandum of Interview "is a very important inspection tool . . . because it documents the fact that [inspectors] maintain open lines of communication" with regulated facilities.  These Memoranda "document any discussion of noncompliance trends" and notify regulated facilities that "continued failure to meet [] regulatory requirements may result in additional regulatory or administrative action."  Memoranda of Interview may note specific instances of noncompliance with regulatory requirements or a trend in such noncompliance.

30.     Memoranda of Interview may also document other important issues, such as new FSIS inspection policies, FSIS's intent to review a regulated facilities' records or the results of such a review, or the results of any activities necessary to verify a regulated facility's claim that it has taken steps to come into compliance with statutory and regulatory requirements.

31.     FSIS also uses Memoranda of Interview to document a facility's response to issues that may lead to noncompliance with statutory or regulatory requirements.  According to FSIS, this documentation is valuable because "[i]f the situation has been documented in a

[Memorandum] on numerous occasions, it would be hard for the establishment to say it didn't know the issue/condition could lead to noncompliance."

32.      Memoranda of Interview also include any objections by a regulated facility to any aspect of the Memorandum, including either a facility's written objection or an inspector's summary of the objection.

**D.      Frequent Requests for Noncompliance Records and Memoranda of Interview**

33.      Because FSIS's Noncompliance Records and Memoranda of Interview are the agency's principal records of its implementation of the HMSA and PPIA, these documents are critical to the public's understanding of the degree to which FSIS enforces these statutes and to any effort to improve such enforcement through public education, advocacy, or statutory and regulatory reform efforts.  Plaintiffs use these documents to monitor FSIS's implementation of the HMSA and PPIA, to disseminate information about violations and enforcement of these statutes to the press and the public, and to advocate for better implementation of these statutes and for humane treatment of animals.  These efforts are central to Plaintiffs' missions to improve the living conditions and treatment of farm animals.

34.      Because obtaining Noncompliance Records and Memoranda of Interview is critical to Plaintiffs' missions, and because these documents are also used by other advocates for farm animal protection and food safety and by journalists who write about these issues, these documents have been the subject of frequent FOIA requests for many years.

35.      While FOIA requests for Noncompliance Records and Memoranda of Interview sometimes focus on individual regulated facilities or on facilities in a particular geographic location, requesters frequently submit more broad, categorical requests for all Noncompliance Records and Memoranda of Interview prepared by FSIS.  For example, Plaintiffs' request at

issue in this case requested, *inter alia*, "all noncompliance records and memoranda of interview, under the Humane Methods of Slaughter Act" as well as "all records for non-compliance related to the treatment of poultry under the PPIA, including noncompliance records and memoranda of interview."

36.     According to FSIS's FOIA logs, which the agency makes available online,[1] Plaintiffs and others have submitted *at least 135 categorical requests* for Noncompliance Records and Memoranda of Interview reflecting implementation of the HMSA or PPIA since 2009.

37.      FSIS's FOIA logs also contain descriptions of the time period for each FOIA request (i.e. the range of dates for the records requested).  The agency's FOIA logs show that Plaintiffs and others have submitted FOIA requests for all Noncompliance Records and Memoranda of Interview under the HMSA and PPIA created between 2004 and the present.

38.     As discussed above, the FOIA Improvement Act of 2016 clarified that the category of frequently requested records that must be affirmatively disclosed under FOIA includes records that have been released at least once and requested at least three times.

39.      Plaintiffs and others have submitted at least three FOIA requests for all Noncompliance Records and Memoranda of Interview under the HMSA and PPIA generated since enactment of the FOIA Improvement Act of 2016.

40.     Although FSIS generally fails to release records within the time limits established under FOIA, FSIS has—eventually—regularly released Noncompliance Records and Memoranda of Interview under the HMSA and PPIA.  On information and belief, FSIS has

---

[1] *See* https://www.fsis.usda.gov/wps/portal/footer/policies-and-links/freedom-of-information-act/fsis-electronic-reading-room/foia-request-reports-archive

released to at least one FOIA requester all such records related to enforcement of the HMSA from 2002 to the end of 2017, and has released to at least one FOIA requester all such records related to enforcement of the PPIA from 2006 (following FSIS's 2005 publication of its Good Commercial Practice Notice advising stakeholders of the importance of treating poultry humanely) to the end of 2017.

41.     FSIS's delay in releasing records in response to FOIA requests under 5 U.S.C. § 552(a)(3) substantially impairs Plaintiffs' efforts to encourage robust implementation of existing laws and regulations, to educate the public about the inhumane treatment that animals regularly face, and to advocate for humane treatment of animals.  For example, Plaintiff AWI recently received a release of noncompliance records and memoranda of interview under the PPIA that are *nearly a year old*, and that were released many months after the FOIA request was submitted. The records that AWI recently received demonstrate a pattern of inhumane treatment of animals that could be ameliorated through more consistent enforcement of existing regulations by FSIS and by improved regulations.  However, AWI has found that its education and advocacy efforts are significantly less effective when based on untimely information.

**E.     Plaintiffs' Request For Release and Proactive Disclosure**

42.     On May 16, 2018, Plaintiffs submitted a FOIA request to the USDA and FSIS under both 5 U.S.C. § 552(a)(2) and 5 U.S.C. § 552(a)(3), requesting the release and the proactive disclosure of records related to the implementation of the HMSA and PPIA.  Plaintiffs' request specifically asked FSIS to provide records to Plaintiffs and to post certain records online pursuant to FOIA's affirmative disclosure requirements.  Plaintiffs' request covered the following information:

    a.   All noncompliance records and memoranda of interview, under the Humane Methods of Slaughter Act, including any supporting records relating to their issuance pursuant to humane slaughter regulations under 9 C.F.R. § 313;

    b.   All records of violations of Good Commercial Practices for the humane handling of birds at slaughter under the Poultry Products Inspection Act ("PPIA"), including

        i.   All inspection records for non-compliance related to the treatment of poultry under the PPIA, including noncompliance records and memoranda of interview;

        ii.   Any other records relating to humane treatment of poultry under the PPIA, including memoranda of information, letters of concern, or letters of cause; and

        iii.   All records of "Good Commercial Practices" under the PPIA.

43.    Plaintiffs specifically requested that USDA and FSIS process this request under 5 U.S.C. § 552(a)(3), by releasing to Plaintiffs the requested records generated from January 2018 until the receipt of Plaintiffs' request, and that USDA and FSIS also process this request pursuant to 5 U.S.C. § 552(a)(2), by posting requested records online, beginning with records generated from January 2018 until the receipt of the request, and by proactively disclosing such records in the future without waiting for further FOIA requests.

44.    Plaintiffs' request explained that the records at issue have been frequently requested and regularly released, and that, because of the nature of their subject matter, these records will continue to be the subject of subsequent requests for substantially the same records.

45.    Plaintiffs' request also specifically noted that FSIS recently described the records at issue in this case as the two most commonly requested types of records for FSIS, and that FSIS stated that "Humane Handling," "Good Commercial Practices," and "Non-Compliance Records"—all of which are included in Plaintiffs' request—are "Commonly Requested

14

Records."  Plaintiffs' request thus demonstrated that FSIS has determined that the records at issue will be the subject of subsequent requests for substantially the same records.

46.     Plaintiffs' request also specifically stated that, "[t]o the extent that the USDA and FSIS believe that they have not 'determine[d]' that these records 'have become or are likely to become the subject of subsequent requests for substantially the same records,' 5 U.S.C. § 552(a)(2)(D)," Plaintiffs requested that FSIS make this determination.

47.     On May 31, FSIS sent an acknowledgment letter regarding Plaintiffs' request, assigning it a request number FOIA-2018-00328.  FSIS characterized Plaintiffs' request as "request[ing] a copy of records relating to the Implementation of the Humane Methods of Slaughter Act and the Poultry Products Inspection Act, from January 1, 2018 to May 16, 2018." FSIS did not acknowledge that Plaintiffs also explained that these records are subject to FOIA's affirmative disclosure mandate, that Plaintiffs requested that FSIS post these records online pursuant to FOIA's affirmative disclosure mandate, or that Plaintiffs requested that FSIS make a determination that such records in fact meet the requirements that apply to the posting of frequently requested records.

48.     On July 6, 2018, FSIS provided a "final response" to Plaintiffs' request. Although FSIS provided a set of redacted responsive records pursuant to 5 U.S.C. § 552(a)(3), the agency's final response again did not acknowledge that Plaintiffs also explained that these records are subject to FOIA's affirmative disclosure mandate, that Plaintiffs requested that FSIS post these records online pursuant to FOIA's affirmative disclosure mandate, or that Plaintiffs requested that FSIS make a determination that such records in fact meet the requirements that apply to the posting of frequently requested records.  As such, the final response did not provide

any determination in response to Plaintiffs' request under 5 U.S.C. § 552(a)(2), FOIA's

affirmative disclosure mandate.

49.     On July 18, 2018, Plaintiffs submitted an administrative appeal to challenge

FSIS's failure to acknowledge or respond to Plaintiffs' request under 5 U.S.C. § 552(a)(2).

Plaintiffs' administrative appeal advised FSIS that "[b]y failing to recognize that [Plaintiffs']

request was for proactive disclosure of records . . .—and not merely for a copy of such records—

FSIS has failed to respond to a critical part of [the] request."  The appeal further noted that "an

agency must respond to a request under 5 U.S.C. § 552(a)(2) by indicating what records it

intends to make available for public inspection in an electronic format, what records it intends to

withhold, and the reasons for the agency's decision."  The appeal also explained that Plaintiffs

"originally submitted this request in the hope of avoiding litigation to compel the agency to

comply with FOIA's proactive disclosure requirement," but that "unless [Plaintiffs] receive a

response to [the] administrative appeal within 20 working days including a determination that

FSIS will make the requested records available online, [Plaintiffs] will have no choice but to file

suit to compel the agency to comply with FOIA's affirmative disclosure mandate."

50.     On July 31, 2018, FSIS sent a letter stating that "FSIS is considering [Plaintiffs']

request for the Agency to proactively disclose records related to the Humane Methods of

Slaughter Act and Poultry Products Inspection Act slaughter activities." Although FSIS's letter

stated that the agency "will contact [Plaintiffs] when a final determination is made," the letter did

not provide any timeframe or deadline for that determination.  FSIS's letter did not acknowledge

or cite Plaintiffs' administrative appeal, instead referring only to the original request.  FSIS's

letter did not provide any determination as to what records the agency intends to make available

for public inspection in an electronic format, what records it intends to withhold, and the reasons for the agency's decision.

51.     More than twenty working days have passed since Defendants received Plaintiffs' administrative appeal.

## PLAINTIFFS' CLAIMS FOR RELIEF

## CLAIMS UNDER FOIA

52.     By failing to make available for public inspection in an electronic format all non-exempt information at issue in this case that has been released and that, because of the nature of its subject matter, is or is likely to become the subject of subsequent requests for substantially the same information, USDA and FSIS are violating FOIA, 5 U.S.C. § 552(a)(2).

53.     By failing to make available for public inspection in an electronic format all non-exempt information at issue in this case that has been released and that has been requested three or more times, USDA and FSIS are violating FOIA, 5 U.S.C. § 552(a)(2).

54.     By failing to make the determination that the information at issue in this case is or is likely to become the subject of subsequent requests for substantially the same information, as specifically requested by Plaintiffs, USDA and FSIS are violating FOIA, 5 U.S.C. § 552(a)(2).

55.     Defendants' violations of FOIA injure Plaintiffs as described in ¶¶ 4, 5, and 41.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that this Court:

1.     Declare that Defendants are violating FOIA by failing to make available for public inspection in an electronic format all non-exempt information at issue that has been released and is or is likely to become the subject of subsequent requests for substantially the same information;

2.      Declare that Defendants are violating FOIA by failing to make available for public inspection in an electronic format all non-exempt information at issue that has been released and that has been requested three or more times;

3.      Declare that Defendants are violating FOIA by failing to determine that the information at issue in this case has become or is likely to become the subject of subsequent requests for substantially the same information;

4.      Order Defendants to make all non-exempt information at issue in this case publicly available for inspection in an electronic format by posting the information on Defendants' website;

5.      Order Defendants to make all such non-exempt information available directly to Plaintiffs and to the public by posting such information on Defendants' website, in the future as soon as possible after such information is generated or obtained by Defendants and without waiting for individual FOIA requests for such information;

6.      Award Plaintiffs their costs and reasonable attorneys' fees in this action; and

7.      Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ William N. Lawton

William N. Lawton
D.C. Bar No. 1046604 (*admitted to* W.D. NY)
Katherine A. Meyer
D.C. Bar No. 244301 (*pro hac vice* pending)
Meyer Glitzenstein & Eubanks, LLP
4115 Wisconsin Ave. NW, Suite 210
Washington, D.C. 20016
(202) 588-5206 (phone)
(202) 588-5049 (fax)
nlawton@meyerglitz.com
kmeyer@meyerglitz.com