```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANIMAL WELFARE INSTITUTE
and FARM SANCTUARY,

                    Plaintiffs,
     v.                                    **DECISION AND ORDER**

UNITED STATES DEPARTMENT                   6:18-CV-06626-MAT
OF AGRICULTURE and FOOD
SAFETY INSPECTION SERVICE,

                    Defendants.
_____
```

## **INTRODUCTION**

Plaintiffs Animal Welfare Institute and Farm Sanctuary ("Plaintiffs") bring this action against defendants United States Department of Agriculture ("USDA") and Food Safety Inspection Service ("FSIS") (collectively, the "Defendants"), alleging violations of Section 552(a)(2) of the Freedom of Information Act ("FOIA"). Docket No. 1.

Presently before the Court is Defendants' motion to dismiss Plaintiffs' complaint for failure to state a claim and for lack of subject matter jurisdiction, pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure. Docket No. 5. For the reasons set forth below, Defendants' motion is denied.

## **BACKGROUND**

Unless otherwise noted, the following facts are taken from Plaintiffs' complaint (Docket No. 1).

Plaintiffs are non-profit organizations dedicated to promoting the humane treatment of animals, including farm animals. *Id*. at

¶¶ 4, 5. As part of their mission, Plaintiffs monitor and report upon the implementation of and compliance with statutory and regulatory standards concerning the humane treatment of farm animals. *Id*. Plaintiffs rely on certain documents in the possession of Defendants to help them accomplish this mission. *Id*.

Defendant USDA is a department of the federal government and has possession and control of the records requested by Plaintiffs. *Id*. at ¶ 6. FSIS is a division of the USDA, and also has possession and control of the records requested by Plaintiffs. *Id*. at ¶ 7. FSIS administers the Humane Methods of Slaughter Act (HMSA) and the Poultry Products Inspection Act (PPIA). *Id*. The HMSA requires that any meat sold to the United States government, and livestock imported into the United States, be slaughtered humanely. *Id*. at ¶ 8. The PPIA requires that poultry processing facilities be operated in accordance with sanitary practices, and requires FSIS to inspect poultry processing facilities and to maintain records of compliance. *Id*. at ¶ 9.

Certain records prepared pursuant to the HMSA and PPIA, including Noncompliance Records and Memoranda of Interview, are at issue in this case. *Id*. at ¶ 24. Noncompliance Records serve "as FSIS's official notification and documentation of [a regulated facility's] failure to meet one or more regulatory requirements." *Id*. at ¶ 25. A Memorandum of Interview "is a written summary of an interview between an FSIS inspector and a regulated facility." *Id*.

at ¶ 29. These records are important, as they serve as evidence of noncompliance with the HMSA and the PPIA, provide the basis for supporting further enforcement actions, and document the communications between an inspector and a regulated facility. *Id*. at ¶¶ 25-32.

On May 16, 2018, Plaintiffs submitted a FOIA request to the USDA and FSIS pursuant to 5 U.S.C. §§ 552(a)(2) and (a)(3), requesting the release <u>and</u> proactive disclosure of records related to the implementation of the HMSA and PPIA. *Id*. at ¶ 42. The requested records covered the period from January 2018, until Defendants' receipt of the request. *Id*. at ¶ 43. There were two components to Plaintiffs' request: (1) the release of the records directly to Plaintiffs, pursuant to 5 U.S.C. § 552(a)(3), and (2) the online posting of the records for public inspection (also referred to herein as the "reading room provision"), and the proactive disclosure of such records in the future, without waiting for further FOIA requests, pursuant to 5 U.S.C. § 552(a)(2). *Id*. Regarding their request pursuant to 5 U.S.C. § 552(a)(2), Plaintiffs also requested that, to the extent Defendants had not determined that the records at issue met the requirements of the reading room provision, that FSIS make such a determination. *Id*. at ¶ 46.

On May 31, 2018, FSIS sent Plaintiffs an acknowledgment letter regarding their request for release of records pursuant to Section

552(a)(3), but did not address the remaining portions of Plaintiffs' request, which were made pursuant to Section 552(a)(2). *Id*. at ¶ 47. On July 6, 2018, in a "final response" to Plaintiffs' request, FSIS provided to Plaintiffs a set of redacted responsive records, pursuant to 5 U.S.C. § 552(a)(3). *Id*. at ¶ 48. The final response did not address the portions of Plaintiffs' request made pursuant to Section 552(a)(2), *i.e.*, the reading room provision and proactive disclosure of the records. *Id*.

On July 18, 2018, Plaintiffs filed an administrative appeal, challenging FSIS's failure to respond to those portions of their request. *Id*. at ¶ 49. Plaintiffs informed FSIS that "unless [Plaintiffs] receive a response to [the] administrative appeal within 20 working days including a determination that FSIS will make the requested records available online, [Plaintiffs] will have no choice but to file suit to compel the agency to comply with FOIA's affirmative disclosure mandate." *Id*. On July 31, 2018, FSIS sent Plaintiffs another letter, stating that it was considering their request for proactive disclosure of the records, and would contact Plaintiffs when a final determination was made. *Id*. at ¶ 50. The letter did not provide a time frame or deadline for the determination, and did not acknowledge Plaintiffs' administrative appeal. *Id*. As more than twenty working days passed since Defendants received Plaintiffs' administrative appeal, Plaintiffs filed suit in federal court. *Id*. at ¶ 51.

## **PROCEDURAL HISTORY**

Plaintiffs filed their complaint on August 23, 2018, alleging that Defendants violated the above-mentioned provisions of the FOIA, found at 5 U.S.C. § 552(a)(2). Docket No. 1 at ¶¶ 52-55. Plaintiffs seek several forms of both declaratory and injunctive relief, including that the Court: (1) declare that Defendants are violating the FOIA by failing to make the requested records available for public inspection in an electronic format; (2) order that Defendants make the requested records publicly available for inspection online; and (3) order that Defendants make this information available, both to the general public online and directly to Plaintiffs, in the future, without waiting for individual FOIA requests for this information. *Id.* at 17-18.

Defendants filed their motion to dismiss on September 26, 2018. Docket No. 5. Defendants seek dismissal of the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), for lack of subject matter jurisdiction and for failure to state a claim. *Id.* at 1. In the alternative, Defendants seeks an Order pursuant to 28 U.S.C. § 1404(a), transferring the case to the United States District Court for the District of Columbia. *Id.*

Plaintiffs filed a response on November 16, 2018 (Docket No. 9), and Defendants replied on February 6, 2019 (Docket No. 12).

**DISCUSSION**

I.  **Standard for a Motion to Dismiss**

   A.  **Fed. R. Civ. P. 12(b)(6)**

To withstand a Rule 12(b)(6) motion to dismiss, the complaint must plead facts sufficient "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal citations and quotation marks omitted). Determining whether a complaint meets the plausibility standard is "context-specific" and requires that the court "draw on its judicial experience and common sense." *Id.* at 679.

   B.  **Fed. R. Civ. P. 12(b)(1)**

"When considering a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court must assume as true the factual allegations set forth in the complaint." *Freeman v. Kirisits*, No. 16-CV-06668, 2017 WL 475679, at *3 (W.D.N.Y. Feb. 6,

2017). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002) (quotation omitted). "[T]he plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id*. "When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff." *Rehabilitation Support Servs., Inc. v. Town of Esopus, N.Y.*, 226 F. Supp. 3d 113, 125 (N.D.N.Y. 2016).

## II.     **Plaintiffs' FOIA Claims**

Defendants first argue that Plaintiffs' FOIA claim alleged pursuant to Section 552(a)(3) must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), because Plaintiffs' complaint does not allege that Defendants "improperly withheld agency records," in violation of Section 552(a)(3). *See* Docket No. 6 at 6-7.

The Court's reading of the complaint is that Plaintiffs are alleging a violation of Section 552(a)(2), rather than a violation of Section 552(a)(3). *See* Docket 1 at 17. Indeed, Plaintiff's complaint alleges that Defendants provided them with responsive documents to their request pursuant Section 552(a)(3), *see* Docket 1 at ¶ 48 ("On July 6, 2018, FSIS provided a 'final response' to Plaintiffs' request. . . . FSIS provided a set of redacted

responsive records pursuant to 5 U.S.C. § 552(a)(3)"), an admission that would seem to defeat any cause of action brought pursuant to Section 522(a)(3). In their response papers, Plaintiffs confirm that this is the case. *See* Docket No. 9 at 9 n.2 ("Defendants fundamentally misconstrue Plaintiffs' Complaint by asserting that Plaintiffs have failed to state a claim under a different section of FOIA, 5 U.S.C. § 552(a)(3). . . . However, Plaintiffs did not bring any challenge under that section of FOIA."). Accordingly, Defendants' motion to dismiss Plaintiffs' claim brought pursuant to Section 552(a)(3) is denied as moot.

Defendants also contend, in a footnote, that there is case law in the D.C. Circuit holding that only agencies, and not their components, may be defendants in FOIA suits in district court, and therefore FSIS should be dismissed as an improper party. Docket No. 6 at 7, n.1. Specifically, Defendants cite to *Mingo v. U.S. Dep't of Justice*, 793 F. Supp. 2d 447 (D.D.C. 2011), but also acknowledge that other district courts in the District of Columbia have held to the contrary, *see Jean-Pierre v. Fed. Bureau of Prisons*, 880 F. Supp. 2d 95, 101 (D.D.C. 2012) ("the weight of authority is that subcomponents of federal executive departments may, at least in some cases, be properly named as FOIA defendants."). Recent case law from within the Second Circuit suggests that a plaintiff may sue agency components under FOIA. *See, e.g., Gizmodo Media Group, LLC v. Federal Bureau of*

*Investigation*, 366 F. Supp. 3d 585 (S.D.N.Y. 2019). Given the lack of controlling precedent and the conflicting case law even within the D.C. Circuit, the Court declines to dismiss FSIS as a party on this basis. Accordingly, Defendants' request that FSIS be dismissed because it is not a proper party to be sued under the FOIA is denied.[1]

Defendants next contend that Plaintiffs have failed to state a claim under the FOIA's "reading room" provision, Section 552(a)(2). *See* Docket No. 6 at 7. That section provides:

> (2) *Each agency, in accordance with published rules, shall make available for public inspection in an electronic format*--
>
> (A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;
>
> (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register;
>
> (C) administrative staff manuals and instructions to staff that affect a member of the public;
>
> (D) *copies of all records, regardless of form or format--*
>
> *(i) that have been released to any person under paragraph (3); and*

---

[1] Defendants also suggest that Plaintiffs have failed to state a claim against the USDA. *See* Docket No. 6 at 7 n.1. The Court disagrees. Plaintiffs allege that the USDA has possession and control of the records involved in this case. Docket No. 1 at ¶ 6. Plaintiffs further allege that they submitted their FOIA request to both the USDA and the FSIS. *Id.* at ¶¶ 42, 43. Although Plaintiffs' allege that FSIS was the party that provided them with a response to their FOIA request (*id.* at ¶ 47), Plaintiffs also allege that FSIS is the division of the USDA which administers the HMSA and PPIA, and that the USDA is involved in the processing of FOIA requests. *See id.* at ¶¶ 7, 23. At this stage of the litigation, these allegations are sufficient to state a claim against the USDA.

> *(ii)(I) that because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records; or*
> *(II) that have been requested 3 or more times*; and
>
> (E) a general index of the records referred to under subparagraph (D).

5 U.S.C. § 552(a)(2)(A-E) (emphasis added). Plaintiffs' request falls within subparagraph D, which requires that Plaintiffs allege: (1) that the records have been released to any person, and (2) that due to the nature of the records, the agency determines that they have become or are likely to become the subject of subsequent requests for substantially the same records, OR that the records have been requested three or more times. *Id*.

Defendants concede that Plaintiffs have satisfied the first prong of the reading room provision by alleging that FSIS released the documents at least one time, by providing the documents to Plaintiffs. *See* Docket No. 6 at 10 ("Thus, with respect to such documents, plaintiffs have satisfied the first prong of the reading room provision by alleging that FSIS released documents at least once.").

Defendants contend that Plaintiffs have not, however, adequately alleged facts satisfying the second prong of the reading room requirement. *See id.* at 10-11. Specifically, Defendants contend that Plaintiffs have failed to allege that the documents they received - redacted Noncompliance Records and Memoranda of Interview relating to the enforcement of the HMSA and PPIA for the time period of January to May 2018 - have been requested at least

three times. *Id*. at 10. Defendants further contend that Plaintiffs have failed to allege that the USDA or FSIS have made a determination that the records released to Plaintiffs have been or are likely to be the subject of multiple requests. *Id*. at 11. The Court disagrees.

Plaintiffs' complaint contains a heading entitled "Frequent Requests for Noncompliance Records and Memoranda of Interview," where they allege that such documents are "also used by other advocates for farm animal protection and food safety and by journalists who write about these issues," and therefore "have been the subject of frequent FOIA requests for many years." Docket No. 1 at ¶ 34. The information contained under this heading addresses the requirements that these records are frequently requested and that they have been requested at least three times. *See id.* at ¶ 39 ("Plaintiffs and others have submitted at least three FOIA requests for all Noncompliance Records and Memoranda of Interview under the HMSA and PPIA generated since enactment of the FOIA Improvement Act of 2016."). For example, the complaint provides that "requesters frequently submit . . . broad, categorical requests for all Noncompliance Records and Memoranda of Interview prepared by FSIS," and references Plaintiffs' own request in this case, for "'all noncompliance records and memoranda of interview, under the Humane Methods of Slaughter Act' as well as 'all records for non-compliance related to the treatment of poultry under the PPIA, including noncompliance records and memoranda of interview.'" *Id*. at ¶ 35. The complaint also references FSIS's FOIA logs, which

reveal that Plaintiffs and others have submitted at least 135 categorical requests for Noncompliance Records and Memoranda of Interview, reflecting implementation of the HMSA or PPIA since 2009. *Id.* at ¶ 36. These logs also contain descriptions of the time period for each FOIA request, and these time periods include records created between 2004 and the present. *Id.* at ¶ 37. Collectively, these allegations provide sufficient information to survive a motion to dismiss by articulating that the broad range of records requested by Plaintiff - *i.e.*, requests for Noncompliance Records and Memoranda of Interview covering the time period up to May 2018 - have been requested at least three times.

Defendants counter by arguing that since Plaintiffs have not identified three other requesters for the "precise documents that FSIS released to plaintiffs here," *i.e.*, "redacted 'noncompliance records' and 'memoranda of interview' generated by the FSIS during the course of its administration and enforcement of the [HMSA] and [PPIA] covering the time period of January to May 2018," Plaintiffs have failed to satisfy the second prong of the reading room provision. *See* Docket No. 6 at 10. The Court declines to read such a specificity into Section 552(a)(2)(D). That provision does not require that the requests, or the presumed productions as a whole, be identical, but rather that certain records were covered by at least three requests. *See* 5 U.S.C. § 552(a)(2) ("Each agency . . . shall make available for public inspection in an electronic format . . . copies of all records, regardless of form or format . . . that have been requested 3 or more times."). Plaintiffs'

allegation that FSIS has received over 135 categorical requests for Noncompliance Records and Memoranda of Interview reflecting implementation of the HMSA or PPIA, which were created between 2004 and the present, covers the range of records released to Plaintiffs (*i.e.*, Noncompliance Records and Memoranda of Interview generated by the FSIS pursuant to the enforcement of the HMSA and PPIA, for the time period of January to May 2018).

The complaint also contains allegations addressing the requirement that, because of the nature of their subject matter, the agency has determined that the records have been or are likely to become the subject of subsequent requests for substantially the same records. Plaintiffs point to specific statements made by FSIS regarding this issue, including that "FSIS recently described the records at issue in this case as the two most commonly requested types of records for FSIS," and "FSIS stated that 'Humane Handling,' 'Good Commercial Practices,' and 'Non-Compliance Records - all of which are included in Plaintiffs' request - are 'Commonly Requested Records.'" *Id*. at ¶ 45.

Under Rule 12(b)(6), while a complaint need not include detailed factual allegations, a claim must be plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The complaint must describe the claim in sufficient detail to give each defendant notice of the essence of the claim and the grounds upon which it rests. *Id.* at 555. A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Whether Plaintiffs will substantiate their claims remains to be seen. However, at this stage of the litigation, Plaintiffs have alleged sufficient factual information that their FOIA claim is plausible on its face; in other words, to give Defendants notice of the claim and the grounds upon which it rests. Accordingly, Defendants' motion to dismiss for failure to state a claim is denied.

**III. <u>The Court's Jurisdiction to Enforce Production of Records</u>**

Defendants argue that the Court lacks jurisdiction to grant Plaintiffs' demand for injunctive relief, *i.e.*, that the Court ordering the government to make records available to the general public, by posting them online pursuant to the reading room provision. Docket No. 6 at 11. Specifically, Defendants contend that FOIA's enforcement provision, 5 U.S.C. § 552(a)(4)(B), grants power to district courts to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* at 12. Defendants cite two cases - again from the District of Columbia - which hold that the injunctive powers contained in Section 552(a)(4)(B) are limited to ordering the production of records to the plaintiff, rather than to the general public. *Id.*; *see Kennecott Utah Copper Corp. v. U.S. Dep't of the Interior*, 88 F.3d 1191, 1202-03 (D.C. Cir. 1996) ("While it might seem strange for Congress to command agencies to 'currently publish' or 'promptly publish' documents, without in the same statute providing courts with power to order

-14-

publication, we think that is exactly what Congress intended. Section 552(a)(4)(B) authorizes district courts to order the 'production' of agency documents, not 'publication.'"); *and Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Justice*, 846 F.3d 1235, 1243 (D.C. Cir. 2017) ("Given *Kennecott*'s construction of section 552(a)(4)(B), we think it clear that a court has no authority under FOIA to issue an injunction mandating that an agency 'make available for public inspection' documents subject to the reading-room provision — the third category of relief [plaintiff] seeks."). In *Citizens*, however, the Court noted that courts have "wide latitude . . . to fashion remedies under FOIA, including the power to issue prospective injunctive relief." *Id*. at 1242. Accordingly, Plaintiffs' request that the Court order Defendants to proactively produce to them certain records appears to be proper.

In response, Plaintiffs argue that the cases cited by Defendants are non-binding decisions. Docket No. 9 at 16. Plaintiffs further contend that the Second Circuit has determined that Section 552(a)(4)(B) references remedial power, rather than subject matter jurisdiction. *Id*. at 16-17; *see also Main St. Legal Servs., Inc., v. Nat'l Sec. Council*, 811 F.3d 542, 566 (2d Cir. 2016) ("Based on its text, we construe § 552(a)(4)(B) to reference remedial power, not subject-matter jurisdiction. The highlighted language does not speak to the court's ability to adjudicate a claim, but only to the remedies that the court may award. . . . Because § 552(a)(4)(B) does not implicate subject-matter

-15-

jurisdiction, we conclude that the district court properly dismissed the complaint on the merits pursuant to Fed. R. Civ. P. 12(b)(6)."). In that regard, Defendants' motion to dismiss based on a lack of subject matter jurisdiction should have been brought pursuant to Fed. R. Civ. P. 12(b)(6), rather than pursuant to Fed. R. Civ. P. 12(b)(1).

Plaintiffs further contend that, even assuming the Court lacks authority to grant their request for injunctive relief, the Court may nonetheless grant Plaintiffs at least declaratory relief. Therefore, it is not necessary for the Court to decide, at this stage of the litigation, whether it has the power to grant Plaintiffs injunctive relief of ordering Defendants to produce the relevant documents to the general public under the reading room provision. Docket No. 9 at 18.

The Court recognizes that it may convert Defendants' 12(b)(1) motion for lack of subject matter jurisdiction to a motion to dismiss for failure to state a claim. However, the Court declines to do so in this case. *See Newsom-Lang v. Warren Internat'l*, 129 F. Supp. 2d 662, 666 (S.D.N.Y. 2001) (acknowledging the court's power to convert improperly filed Rule 12(b)(1) motion to 12(b)(6) motion for failure to state a claim, or to a motion for summary judgment, but declining to do so). In declining to do so, the Court is particularly cognizant of the absence of controlling authority holding that the Court does not have the power to order injunctive relief when an agency violates 5 U.S.C. § 522(a)(2). The provision at issue - Section 552(a)(4)(B) - provides that "the

district court of the United States . . . has jurisdiction to enjoin the agency from withholding agency records <u>and</u> to order the production of any agency records withheld from the complainant." 5 U.S.C. § 552(a)(4)(B) (emphasis added). Despite out-of-circuit case law holding to the contrary, a plain reading of this section seems to suggest that a district court has both the authority to enjoin the agency from withholding records (*i.e.*, injunctive relief), and to order the production of any agency records withheld from a particular plaintiff, which would appear to cover the reading room provision. Defendants' argument, however, suggests that there is virtually no meaningful remedy for parties aggrieved under the reading room provision. This runs contrary to Section 552's purpose, which is to "require agencies of the Federal Government to make certain agency information available for *public* inspection and copying and to establish and enable enforcement of *the right of any person to obtain access to the records of such agencies*, subject to statutory exemptions, for any public or private purpose." *See* H.R. Rep. 104-795, at *2 (emphasis added). As explained above, the allegations contained in the complaint are otherwise sufficient and, at this stage of the litigation, the Court declines to dismiss Plaintiffs' complaint on this basis.

**IV.** **Transfer of Venue**

In the alternative, Defendants request that the Court transfer venue of the case to the United States District Court for the District of Columbia. Docket No. 6 at 13. While acknowledging that venue is proper in the Western District of New York,

Defendants nonetheless contend that the Court should transfer the case to the District of Columbia, for the following reasons: plaintiff Animal Welfare Institute has its principal place of business in Washington, D.C., the records at issue are alleged to be located in Washington, D.C., and under the FOIA venue statute, the District of Columbia is the default jurisdiction for the litigation of FOIA cases. *Id*. at 14-15.

Title 28, United States Code, Section 1404 provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "The determination whether to grant a change of venue requires a balancing of conveniences, which is left to the sound discretion of the district court." *Filmline Productions, Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989). A district court may consider, *inter alia*, the following factors when determining whether to grant a motion to transfer venue: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *New York Marine and General Ins. Co. v. Lafarge North America*, 599 F.3d 102, 112 (2d Cir. 2010) (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006)).

Plaintiff's choice of forum is generally "entitled to substantial deference." *See Gross v. British Broadcasting Corp.*, 386 F.3d 224, 230 (2d Cir. 2004). The party moving for transfer must show by clear and convincing evidence that the factors favor the transfer. *N.Y. Marine*, 599 F.3d at 113–114.

Defendants have failed to satisfy their burden to demonstrate by clear and convincing evidence that the above-mentioned factors favor transfer to the District of Columbia. Defendants make only conclusory, unsupported statements regarding the convenience of the parties, and fail to address several of the above-mentioned factors, including Plaintiff's choice of forum, the convenience of witnesses, the relative ease of access to sources of proof, the locus of operative facts, ability to compel unwilling witnesses, and the relative means of the parties. *See Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 987 (E.D.N.Y. 1991) (moving party "must support the application with an affidavit containing detailed factual statements relevant to the factors set forth above. . . ."); *Riso Kagaju Corp. v. A.B. Dick Co.*, 300 F. Supp. 1007, 1010 (S.D.N.Y. 1969) ("the primary element of an adequate presentation is the submission of affidavits detailing the names and location of the potential principal witnesses and the substance of their testimony, so that the Court may evaluate — not speculate upon — the actual probability of securing the asserted increased convenience offered by the proposed transferee district.").

Considering all of the relevant factors and giving substantial deference to Plaintiffs' choice of forum, the Court finds that

Defendants have not shown by clear and convincing evidence that venue is more appropriate in the District of Columbia. Accordingly, Defendants' motion for a change of venue is denied.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction is denied.  Defendants' motion in the alternative for transfer of the case to the United States District Court for the District of Columbia is also denied.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

Dated:   July 15, 2019
         Rochester, New York